2015 ND 140

**PETERBILT OF FARGO, INC.,**
**Plaintiff and Appellee**

v.

**RED RIVER TRUCKING, LLC, State**
**Bank of Hawley, Defendants**

**Red River Trucking, LLC, Appellant.**

**No. 20140243.**

Supreme Court of North Dakota.

June 1, 2015.

Rehearing Denied July 6, 2015.

Caren L. Wanner Stanley, Fargo, N.D., for plaintiff and appellee.

Stephen P. Welle (argued) and Sean T. Foss (on brief), Fargo, N.D., for appellant.

SANDSTROM, Justice.

[¶ 1] Red River Trucking, LLC, appeals from an amended judgment determining Peterbilt of Fargo, Inc., had a valid repairman's lien for completed repairs to a truck owned by Red River Trucking, Peterbilt breached a contract with Red River Trucking to repair the truck, and Red River Trucking was entitled to $390.66 in damages for Peterbilt's breach of the repair contract. We conclude Red River Trucking's appeal from the amended judgment is timely and issues about damages for breach of the repair contract are not moot because of the subsequent sheriff's sale of the truck. We also conclude the district court did not clearly err in finding Red River Trucking failed to mitigate its damages and in awarding Red River Trucking $390.66 in damages for Peterbilt's breach of the repair contract. We affirm.

I

[¶ 2] Patrick Larkin formed Red River Trucking in 1996 to engage in the commercial hauling of gravel and aggregate, and he owned three trucks for his business, the PT 2, the PT 3, and the PT 4. In November 2010, the PT 2 ("the truck") sustained considerable damage in an accident and was taken to Peterbilt for repairs. At the time of the accident, the truck was worth about $22,500. Red River Trucking's insurance company determined the damage to the truck exceeded its value and paid Red River Trucking and a bank lienholder $22,500 for the truck in February 2011. Red River Trucking decided to keep the truck with a salvaged title and to have it repaired. Red River Trucking and Peterbilt executed a "repair order worksheet" in January 2011 in which Peterbilt agreed to repair the truck for an estimated cost of $37,505.65 and Red River Trucking agreed to pay Peterbilt "cash" for the repairs. The parties agree the contract required the repairs to be completed by May 1, 2011, and the term "cash" meant payment was due after the repairs were completed.

[¶ 3] According to Peterbilt, it became concerned about Red River Trucking's ability to pay for the repairs because of the relative value of the truck to the total cost of the repairs and because Red River Trucking had failed to pay Allstate Peterbilt Group, a business affiliated with Peterbilt, for a rented replacement truck. Pet-

erbilt stopped repair work on the truck on March 23, 2011, after making repairs valued at $31,346.65. According to Steve Mikkelson, Peterbilt's body shop manager, he advised Larkin in March 2011 that Peterbilt would not continue repairs on the truck until Red River Trucking paid for half of the estimated repairs to the truck. In June 2011, Larkin inquired about the status of the truck, and Peterbilt offered to release the truck to Red River Trucking upon payment for the repairs completed to that date. Peterbilt alternatively offered to complete repairs on the truck on the condition that Red River Trucking then pay for about half of the repairs and pay the balance upon completion. Red River Trucking declined to pursue either alternative, and Peterbilt retained possession of the truck without making any further repairs.

[¶ 4] Peterbilt sued Red River Trucking, claiming a repairman's lien in the amount of $31,346.65 for the completed repairs. Red River Trucking answered, denying Peterbilt had a valid repairman's lien. Red River Trucking also counterclaimed, alleging Peterbilt breached the repair contract by not completing the repairs by May 1, 2011, and seeking damages for lost profits after that date. Peterbilt replied to the counterclaim, alleging Red River Trucking failed to mitigate its damages.

[¶ 5] After a bench trial, the district court ruled Peterbilt had a valid repairman's lien for the completed repairs on the truck and was entitled to $31,346.65 for the reasonable value of those repairs. The court ruled Peterbilt was entitled to foreclose its repairman's lien by selling the truck and applying proceeds of the sale to offset the value of the repairs. The court also concluded Peterbilt breached the parties' repair contract when the truck was not repaired by May 1, 2011, and Red

River Trucking thereafter failed to mitigate its damages for the breach. The court said Larkin decided not to take the truck to another repair shop because he was "fed up" and he acknowledged he did nothing to mitigate his damages because he expected the truck to be fixed. The court explained Larkin additionally chose not to spend $6,000 to have another truck, the PT 3 ("other truck"), repaired and made a business decision to let that truck sit idle until February 2013. The court said that by not using available proceeds from a July 2011 sale of equipment to repair either truck, Red River Trucking failed to mitigate its damages in July 2011. The court rejected Red River Trucking's claim for $201,564 in lost profits from 2011 through 2013 and awarded Red River Trucking $390.66 for two months of lost profits resulting from Peterbilt's breach of contract.

[¶ 6] Red River Trucking moved to amend the district court's decision, arguing the court erroneously determined Red River Trucking failed to mitigate its damages and incorrectly calculated damages at $390.66 instead of $39,042.63. The court denied Red River Trucking's motion to amend, and a notice of entry of judgment was served on Red River Trucking on April 30, 2014. That judgment awarded Peterbilt $31,346.65 for its repairman's lien and awarded Red River Trucking $390.66 as an offset against the amount awarded to Peterbilt.

[¶ 7] On May 9, 2014, Peterbilt submitted a proposed amended judgment stating it had completed repairs on the truck and the final cost to repair the truck was $34,128.97. On May 13, 2014, the district court entered an amended judgment including the cost to complete the repairs on the truck and increasing the amount of Peterbilt's total judgment, plus costs, against Red River Trucking to $34,842.21.

A notice of entry of the amended judgment was served on Red River Trucking on May 14, 2014. Red River Trucking appealed from the amended judgment on July 7, 2014. The truck was sold at a sheriff's sale on July 15, 2014.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction over an appeal from a judgment under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01. Peterbilt argues, however, that Red River Trucking's appeal is not timely and is moot, and we initially consider those arguments.

## II

### A

[¶ 9] Peterbilt argues Red River Trucking's appeal is not timely under N.D.R.App.P. 4(a), because it was not filed within 60 days of notice of entry of the April 30, 2014, judgment. Peterbilt claims the May 13, 2014, amended judgment did not substantively change the initial judgment and Red River Trucking's failure to timely appeal from the initial judgment requires dismissal of the appeal.

[¶ 10] When Red River Trucking filed its notice of appeal on July 7, 2014, N.D.R.App.P. 4(a)(1) required a notice of appeal to be filed with the clerk of the district court [1] within 60 days from service of notice of entry of the judgment or order being appealed. Under N.D.R.App. 4(a)(3)(A)(iv), the full time for appeal runs from service of notice of entry of an order disposing of a timely motion to alter or amend a judgment under N.D.R.Civ.P. 59.

[¶ 11] Notice of entry of the initial judgment was served on Red River Trucking on April 30, 2014. On May 9, 2014,

Peterbilt submitted to the district court a proposed amended judgment reflecting it had completed repairs on the truck and the final cost to repair the truck was $34,128.97. On May 13, 2014, the court entered an amended judgment including the costs for the completed repairs, and Peterbilt filed its notice of appeal within 60 days of the May 14, 2014, notice of entry of the amended judgment. We conclude Peterbilt's request to amend the judgment to reflect the completed repair costs was a timely motion to alter or amend the judgment under N.D.R.Civ.P. 59, and Red River Trucking's full time for appeal ran from service of notice of entry of the amended judgment under N.D.R.App.P. 4(a)(3)(A)(iv). We therefore conclude Red River Trucking's appeal from the May 13, 2014, amended judgment is timely.

### B

[¶ 12] Peterbilt argues Red River Trucking's appeal is moot because Red River Trucking did not seek a stay of the sheriff's sale of the truck pending appeal.

[¶ 13] "We will dismiss an appeal if the issues become moot and no actual controversy is left to be decided." *Simpson v. Chicago Pneumatic Tool Co.,* 2003 ND 31, ¶ 7, 657 N.W.2d 261. "An appeal is moot when an appellate court is unable to render effective relief due to the lapse of time, or the occurrence of an event before the appellate court renders its decision." *Id.* A "failure to obtain a stay pending appeal of a court authorized or ordered conveyance of property to third persons . . . moots issues raised on appeal about the conveyance." *In re Estate of Shubert,* 2013 ND 215, ¶ 18, 839 N.W.2d 811.

1. Rule 4, N.D.R.App.P., was amended effective October 1, 2014, to require an appealing party to file the notice of appeal with the clerk of the supreme court instead of the clerk of the district court.

[¶ 14] Red River Trucking's appeal does not seek to undo the sheriff's sale of the truck. Rather, Red River Trucking's appeal challenges the district court's determination of damages for Peterbilt's breach of the repair contract. The sale of the truck is not germane to whether the court erred in reducing Red River Trucking's damages under the doctrine of mitigation of damages or whether the court erred in calculating Red River Trucking's lost profits. The substantive issues raised in this appeal relate to mitigation and the amount of damages for breach of the repair contract and do not challenge the validity of the repairman's lien or seek to undo the sheriff's sale of the truck. In the context of the issue raised in this appeal, we conclude the sheriff's sale of the truck does not moot the issues about mitigation of damages and lost profits.

### III

[¶ 15] Red River Trucking argues the district court erroneously found Red River Trucking failed to mitigate its damages by not submitting to Peterbilt's demands for early payment after Peterbilt had breached the parties' repair contract.

[¶ 16] "A trial court's determination of the amount of damages caused by a breach of contract is a finding of fact subject to the clearly erroneous standard of review." *Keller v. Bolding*, 2004 ND 80, ¶ 22, 678 N.W.2d 578. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 15. "We do not reverse the trial court's factual findings merely because we may view the evidence differently, and a choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* at ¶ 22. "In reviewing findings of fact, we give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of the witnesses." *Id.* "We view the evidence in the light most favorable to the findings, and we do not reweigh evidence or reassess credibility if there is evidence to support the trial court's findings." *Id.* A trial court's findings of fact are adequate if they provide an understanding of the basis for the court's determination. *VND, LLC v. Leevers Foods, Inc.*, 2003 ND 198, ¶ 27, 672 N.W.2d 445.

[¶ 17] Section 32–03–09, N.D.C.C., generally describes the measure of damages for breach of a contract:

For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin.

[¶ 18] In breach of contract actions, we have said, "A person injured by the wrongful acts of another has a duty to mitigate or minimize the damages and must 'protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.'" *Coughlin Constr. Co., Inc. v. Nu–Tec Indus., Inc.*, 2008 ND 163, ¶ 12, 755 N.W.2d 867 (quoting *Hanson v. Boeder*, 2007 ND 20, ¶ 8, 727 N.W.2d 280). *E.g., Lochthowe v. C.F. Peterson Estate*, 2005 ND 40, ¶ 21, 692 N.W.2d 120; *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792, 797 (N.D.1976); *Tomlinson Lumber Yard v. Engel*, 216 N.W.2d 87, 89 (N.D.1974); *Nicola v. Meis-*

*ner*, 84 N.W.2d 702, 705 (N.D.1957). *See* Restatement (Second) of Contracts § 350(1) (1981) (stating "damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation"). Under our case law, the law imposes an obligation on injured parties to take reasonable steps to limit their damages if they can do so through reasonable exertion or at a trifling expense. *Coughlin*, at ¶ 12.

## A

[¶ 19] Red River Trucking initially argues Peterbilt had the burden of proving Red River Trucking did not fulfill its duty to mitigate its damages and its refusal as a nonbreaching party to deal with the breaching party, Peterbilt, is presumed reasonable and does not constitute a failure to mitigate. Red River Trucking claims the district court failed to squarely place the burden on Peterbilt to establish Red River Trucking failed to mitigate its damages. Red River Trucking also claims "this Court should conclude that it is presumptively reasonable for the nonbreaching party to refuse to deal with the breaching party, and the nonbreaching party's refusal to do so cannot ... support a finding that it failed to mitigate its damages."

[¶ 20] The parties' pleadings generally framed issues about damages for breach of contract and mitigation of damages. During trial proceedings and in its motion to amend the findings of fact and order for judgment, however, Red River Trucking did not specifically argue that Peterbilt had the burden of proving Red River Trucking failed to mitigate its damages or that a nonbreaching party's refusal to deal with a breaching party is presumed reasonable. Rather, in its pretrial statement, Red River Trucking argued any claimed anticipatory repudiation of the contract by

Red River Trucking was not available to Peterbilt as a defense to Red River Trucking's breach of contract claim because Peterbilt's repair of the truck was a condition precedent to Red River Trucking's payment for repairs. Red River Trucking claimed it never made a positive statement to Peterbilt that Red River Trucking would not perform under the contract. In Red River Trucking's motion to amend the findings of fact and order for judgment, Red River Trucking argued the district court erred in concluding Red River Trucking failed to mitigate its damages by failing to pay for completed repairs before being contractually required to pay and after Peterbilt had repudiated the original contract.

[¶ 21] In *Coughlin Constr.*, 2008 ND 163, ¶¶ 9–10, 755 N.W.2d 867, we rejected the appellants' attempt to raise an issue on appeal about a potential double recovery for certain damages which had not been expressly raised at any point in the district court proceedings. In that case, the appellants argued " 'the damages "battle" was framed by both parties in very general terms' and the [district] court had a duty to correctly apply the law on the proper measure of damages to the facts and arrive at a correct damages calculation." *Id.* at ¶ 9. We concluded the appellants' argument was contrary to several well-established principles of appellate review, including that district court judges are not obligated to arrive at the correct amount of damages regardless of the parties' input and objections and that this Court does not address new issues raised for the first time on appeal. *Id. See also Hanson*, 2007 ND 20, ¶¶ 14–16, 727 N.W.2d 280 (declining to consider argument about double recovery of certain damages raised for first time on appeal); *Robert v. Aircraft Inv. Co., Inc.*, 1998 ND 62, ¶ 14, 575 N.W.2d 672 (declining to address question about damages for

cost of repairs presented for first time on appeal).

[¶ 22] Red River Trucking did not explicitly raise issues at any point in the district court proceedings about the burden of proving a failure to mitigate or the existence of a presumption that a non-breaching party's failure to deal with a breaching party is reasonable. We reject Red River Trucking's attempt to make those arguments for the first time on appeal, and we decline to address them.

### B

[¶ 23] Red River Trucking argues there was insufficient evidence to show it failed to mitigate its damages. Red River Trucking argues it did not act unreasonably in refusing to accede to Peterbilt's demands to pay for the repairs to the truck before completion and it did not fail to mitigate its damages by not repairing the other truck because the $6,000 cost for repairing that truck was not a trifling expense.

[¶ 24] The district court decided Peterbilt breached the repair contract when the repairs on the truck were not completed by May 1, 2011, and Red River Trucking failed to mitigate its damages in July 2011:

Larkin testified that if he needed to pay for half of the repairs, he could have gotten the money, and further, the reason he did not pay was because the truck was not finished. Larkin decided not to take the truck somewhere else because he was "fed up."

Larkin specifically acknowledged that he did nothing to mitigate his damages because he expected the truck to be fixed. In July, 2011, Red River sold two chassis for approximately $41,000.00. Larkin acknowledged that this money could have covered the repairs to [the truck]. In addition, the cost of repairing [the other truck] was approximately $6,000.00, and Larkin chose not to have [the other truck] repaired until February, 2013, but instead made a "business decision" to let [the other truck] sit idle. The Court hereby finds that when Larkin sold two chassis for approximately $41,000.00 in July, 2011, and decided not to use that money to fix either [truck], that he failed to mitigate any damages resulting from Peterbilt's breach. Therefore, the proper measure of damages that Red River can claim as a result of Peterbilt's breach is limited to the time between May, 2011, the date of the breach, and July, 2011, when Red River failed to mitigate its damages.

[¶ 25] The district court explicitly found Peterbilt breached the repair contract when the repairs to the truck were not completed by May 1, 2011, and Red River Trucking was damaged because the truck was not operational on that date. The court also found Red River Trucking failed to mitigate its damages in July 2011, because at that time, future lost profits could have been avoided by reasonable efforts under the existing circumstances. After Peterbilt breached the contract to repair the truck, Peterbilt offered Red River Trucking a choice either to pay for the completed repairs, which were subject to a repairman's lien, and take the truck elsewhere for repairs, or to pay for about half the completed repairs and Peterbilt would finish the repairs to the truck. When Peterbilt breached the contract by not completing the repairs to the truck by May 1, 2011, the amount of the completed repairs was not an insubstantial amount, but Peterbilt nevertheless was entitled to a repairman's lien for the completed repairs to the truck. *See* N.D.C.C. § 35–13–01 (authorizing repairman's lien "for reasonable charges for work done and materials furnished, until the charges are paid"). Evidence in the record supports the dis-

trict court's findings about Red River Trucking's decision to not repair the truck in July 2011, including evidence about getting the remaining repairs done elsewhere to make the truck operational. The court's findings are not based on an erroneous application of the law and are adequate to understand the basis for the court's decision that Red River Trucking failed to minimize its damages through a reasonable exertion at an expense it was obligated to pay to Peterbilt under the repairman's lien. We are not left with a definite and firm conviction the court made a mistake in determining Red River Trucking failed to mitigate its damages by not having the truck repaired in July 2011, and we conclude the court's finding that Red River Trucking failed to mitigate its damages in July 2011 is not clearly erroneous.

[¶ 26] Because we conclude the district court did not clearly err in determining Red River Trucking failed to mitigate its damages in July 2011 by not taking the truck to another repair shop after paying Peterbilt for the completed repairs on that truck, we do not address Red River Trucking's argument about the court's additional finding that Red River Trucking failed to mitigate its damages by not paying $6,000 to repair the other truck. *See Come Big or Stay Home, LLC v. EOG Resources Inc.*, 2012 ND 91, ¶ 27, 816 N.W.2d 80 (affirming district court's summary judgment dismissal of plaintiff's claims for breach of contract, breach of fiduciary duty, and conversion and declining to address court's alternative ruling that plaintiff established no basis for award of damages).

### IV

[¶ 27] Red River Trucking argues the district court erroneously calculated its lost profits by using a single year of maintenance costs for its trucks rather than an average of its maintenance costs from 2011 through 2013.

[¶ 28] A district court's determination of the amount of a party's damages is a question of fact subject to the clearly erroneous standard of review. *Keller*, 2004 ND 80, ¶ 22, 678 N.W.2d 578; *Hanson*, 2007 ND 20, ¶ 7, 727 N.W.2d 280. We will sustain an award of damages if it is within the range of evidence presented to the trier of fact. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 28, 730 N.W.2d 841.[1]

[¶ 29] The district court's damage award used Red River Trucking's calculation of profits of $64,894 for one truck in 2011, which was the year the court found Red River Trucking lost profits because the truck was not available for use. After deducting $40,000 for a driver's salary and $23,136 for annual repairs and maintenance, the court found that Red River Trucking had a profit of $1,758 in 2011. The court divided that profit by nine because Red River Trucking operated its trucks for nine months of the year and calculated lost profits at $195.33 per month. The court then awarded Red River Trucking $390.66 for two months of lost profits in 2011.

[¶ 30] The district court's calculation of Red River Trucking's lost profits is within the range of evidence presented at trial. We decline Red River Trucking's invitation to reweigh that evidence or reassess the credibility of witnesses for those lost profits. We are not left with a definite and firm conviction the court made a mistake in calculating Red River Trucking's lost profits, and we conclude the court's findings are not clearly erroneous.

### V

[¶ 31] We affirm the judgment.

[¶ 32] GERALD W. VANDE WALLE, C.J., GARY H. LEE D.J., DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 33] The Honorable GARY H. LEE, D.J., sitting in place of KAPSNER, J., disqualified.