# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2019 ND 301

Julie Lessard,

Plaintiff and Appellee

v.

Kevin Johnson,

Defendant and Appellant

## No. 20190077

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Frank L. Racek, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Michael L. Gjesdahl, Fargo, ND, for plaintiff and appellee; submitted on brief.

Kristin A. Overboe, Fargo, ND, for defendant and appellant; submitted on brief.

# Lessard v. Johnson
## No. 20190077

**Crothers, Justice.**

[¶1] Kevin Johnson appeals from an amended judgment granting Julie Lessard a divorce and from orders denying his motions for a new trial and for contempt. Johnson argues the district court erred in denying his motion for a new trial, deciding primary residential responsibility for the parties' children, dividing the marital estate, and denying his motion for contempt. We affirm.

I

[¶2] Johnson and Lessard were married in 2006, and have three minor children together. In 2018 Lessard sued for divorce, requesting the district court award her primary residential responsibility for the parties' children, order Johnson to pay child support, and equitably distribute the parties' assets and debts. Johnson responded and requested the court award him primary residential responsibility for the children, child support, spousal support, an equitable division of the marital estate, and attorney's fees. The parties filed a joint asset and debt listing under N.D.R.Ct. 8.3.

[¶3] The trial was scheduled for October 2, 2018, but was rescheduled to December 6, 2018. Johnson's attorney moved to withdraw as counsel, which the district court granted on October 31, 2018. On November 30, 2018, Johnson's new counsel filed a notice of appearance. On December 4, 2018, Johnson moved for a continuance, arguing he recently hired a new attorney, Lessard hampered his efforts to do so because she controlled marital funds, and she was unwilling to give him enough money to hire an attorney. The court denied Johnson's motion.

[¶4] After a court trial, the district court awarded Lessard primary residential responsibility for the children, awarded Johnson parenting time, ordered Johnson's child support obligation was $0 per month, and ordered neither party shall pay the other spousal support. The court also divided the marital estate and ordered that each party was responsible for his or her own attorney's fees. Judgment was entered, and was later amended.

[¶5] On March 6, 2019, Johnson moved to modify primary residential responsibility for the children. He also moved for a new trial and relief from the judgment, arguing the irregularities in the proceedings, including the district court's denial of his motion for a continuance, prevented him from having a fair trial. He argued the court's property division was not equitable and the court did not explain the disparity in the division, and the court did not properly apply the best interest factors in deciding primary residential responsibility for the children. Johnson also moved to amend the judgment and to hold Lessard in contempt. Lessard opposed the motions. The district court denied Johnson's post-judgment motions. Johnson timely appealed.

II

[¶6] Johnson argues the district court erred by denying his motion for a new trial under N.D.R.Civ.P. 59 because the court's failure to grant his request for a continuance prejudiced the presentation of his case and deprived him of an equal opportunity to prepare for trial. He claims he requested a continuance for good cause because Lessard controlled the marital funds and she refused his request for money, which restricted his efforts to find an attorney.

[¶7] A district court has discretion in deciding whether to grant or deny a motion for a new trial under N.D.R.Civ.P. 59(b). *Riddle v. Riddle*, 2018 ND 62, ¶ 5, 907 N.W.2d 769. Our review of the court's decision is limited to deciding whether the court manifestly abused its discretion. *Id.* A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.*

[¶8] Under N.D.R.Civ.P. 59(b)(1), a court may grant a motion for a new trial on the grounds of "irregularity in the proceedings of the court, jury, or adverse party, or any court order or abuse of discretion that prevented a party from having a fair trial[.]" Under N.D.R.Ct. 6.1(b) a motion for a continuance "shall be promptly filed as soon as the grounds therefor are known and will be granted only for good cause shown[.]"

2

[¶9]   The district court denied Johnson's motion for a new trial. The court explained that the parties were told to be ready for trial on October 2, 2018, written discovery was closed, the parties engaged in mediation, the parties essentially agreed to the financial items, and primary residential responsibility for the children remained an issue. The court found Johnson's first attorney withdrew on October 31, 2018, new counsel filed a notice of appearance on November 30, 2018, and Johnson moved for a continuance two days before trial on December 4, 2018. The court found Johnson knew he needed new counsel but he waited one month before acquiring new counsel and he failed to show how the failure to grant a continuance was an irregularity in the proceedings of the court that prevented him from having a fair trial. The court found each party was allowed time to present their case, almost all of the parties' exhibits were accepted, each party was allowed to testify, and the failure to grant a continuance did not prevent a fair trial.

[¶10] Johnson failed to establish the district court abused its discretion by denying his motion for a new trial. We conclude the court did not act in an arbitrary, unreasonable, or unconscionable manner by denying Johnson's motion for a new trial.

III

[¶11] Johnson argues the district court erred in awarding Lessard primary residential responsibility for the parties' children. He contends the court failed to consider relevant best interest factors and erred by finding his alcoholism played a significant role in weighing the best interest factors because he had been sober for more than one year at the time of the court's decision.

[¶12] Our review of a district court's decision on primary residential responsibility is limited:

> "A district court's decisions on [primary residential responsibility] . . . are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made.

3

Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a [primary residential responsibility] case or substitute our judgment for a district court's initial [primary residential responsibility] decision merely because we might have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult [primary residential responsibility] decision involving two fit parents."

*Grasser v. Grasser*, 2018 ND 85, ¶ 17, 909 N.W.2d 99 (quoting *Thompson v. Thompson*, 2018 ND 21, ¶ 7, 905 N.W.2d 772).

[¶13] The district court must award primary residential responsibility to the parent who will best promote the children's best interests and welfare. *Dick v. Erman*, 2019 ND 54, ¶ 7, 923 N.W.2d 137. The court must consider the relevant best interest factors under N.D.C.C. § 14-09-06.2 in deciding primary residential responsibility. *Zuo v. Wang*, 2019 ND 211, ¶ 11, 932 N.W.2d 360. The court is not required to make separate findings for each best interest factor, but the court's findings must contain sufficient specificity to show the factual basis for the primary residential responsibility decision. *Rustad v. Baumgartner*, 2018 ND 268, ¶ 4, 920 N.W.2d 465.

[¶14] Johnson argues the district court did not make any findings about best interest factors (b), (d), (f), (h), and (i), and nothing indicates the court considered those factors. He also contends the court's reasoning is not rational because it found he had been sober for more than a year but also found his history of alcoholism was a predominant factor in deciding primary residential responsibility.

[¶15] The district court considered the best interest factors and made findings about relevant factors. It is clear from the court's findings that Johnson's drinking weighed heavily in favor of awarding primary residential responsibility to Lessard. The court found Johnson's alcoholism impaired his emotional ties with the children and his ability to tend to the children's developmental needs, and it adversely affected his relationship with the children. The court found factors (a), (c), (g), and (j) favored Lessard. In finding

factor (a), the ability of each parent to provide the children with love and affection, favored Lessard, the court found "[Johnson's] drinking, and its effect on his temperament, judgment, and focus, impair the children's emotional ties with him and his ability to provide them emotional sustenance and guidance." The court found factor (c), the children's developmental needs, favored Lessard because she played a stronger role in the children's educational and social lives and Johnson was not entirely supportive of the children making and maintaining friendships. The court found factor (g), the parties' health, was the predominant best interest factor and it strongly favored Lessard, explaining:

> "[Johnson] is an alcoholic who has been an active drinker throughout the parties' marriage. He has been diagnosed, as suffering 'Alcohol Use Disorder, Severe,' and has been in recovery for approximately one year having enrolled in treatment after being removed from the marital home.
> "[Johnson's] drinking adversely affected his relationship with [Lessard and the children]. It impaired [Johnson's] abilities to devote his positive energies and attributes to being a husband and father and, worse, made him, at times, surly, mean, and self-absorbed."

The court found insufficient evidence existed to trigger the statutory presumption about domestic violence, but the factor favored Lessard because there was evidence of injuries to one of the children, on other occasions after drinking Johnson threatened to hit the children with a belt, and Johnson's denials about these incidents were not credible.

[¶16] Johnson asks us to reweigh the evidence and retry the case or substitute our judgment for the district court's decision, which we do not do under our limited standard of review. *See Grasser*, 2018 ND 85, ¶ 17, 909 N.W.2d 99. The court's findings contained sufficient specificity to show the factual basis for the court's decision, and the evidence supports the court's findings. The court's decision on primary residential responsibility is not clearly erroneous.

5

## IV

[¶17]   Johnson argues the district court erred in distributing the marital estate and denying his request for spousal support.

## A

[¶18] Lessard moved to dismiss the appeal to the extent Johnson raised issues related to the distribution of the marital estate and spousal support. She argued Johnson waived the right to appeal these issues by accepting the benefits of the judgment. We summarily reject her motion. *See, e.g., Tuhy v. Tuhy*, 2018 ND 53, ¶¶ 6-8, 907 N.W.2d 351; *DeMers v. DeMers*, 2006 ND 142, ¶¶ 25-28, 717 N.W.2d 545.

## B

[¶19] Johnson argues the district court did not equitably distribute the parties' property and did not make findings about the values of the property or the entire estate. Johnson also argues the court found he would receive a property distribution in excess of $1.5 million and Lessard was awarded a net award of $1.8 million, and the court did not explain the $300,000 disparity.

[¶20] A court's property distribution is treated as a finding of fact, which is subject to the clearly erroneous standard of review. *Tuhy*, 2018 ND 53, ¶ 10, 907 N.W.2d 351. We view the evidence in the light most favorable to the findings, and the district court's findings are presumptively correct. *Id.*

[¶21] Under N.D.C.C. § 14-05-24(1), the district court must make an equitable distribution of the parties' property and debts. All property held by either party is considered marital property, and the court must determine the total value of all marital property before dividing the property. *Tuhy*, 2018 ND 53, ¶ 10, 907 N.W.2d 351. The court must equitably divide the marital estate applying the *Ruff-Fischer* guidelines, which include:

> "'The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial

circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.'"

*Id.* (quoting *McCarthy v. McCarthy*, 2014 ND 234, ¶ 9, 856 N.W.2d 762). "A long-term marriage generally supports an equal division of the marital estate." *Lizakowski v. Lizakowski*, 2019 ND 177, ¶ 10, 930 N.W.2d 609. A property distribution does not need to be equal to be equitable, but a substantial disparity must be explained to provide an indication of the court's rationale. *Tuhy*, at ¶ 10.

[¶22] Our review is limited when a party files a motion for a new trial under N.D.R.Civ.P. 59:

"[I]t is well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court. This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself. . . . [T]his rule forecloses appellate review of alleged errors . . . which were not raised on the motion for a new trial."

*Prairie Supply, Inc. v. Apple Elec., Inc.*, 2015 ND 190, ¶ 7, 867 N.W.2d 335 (quoting *Cartier v. Nw. Elec., Inc.*, 2010 ND 14, ¶ 16, 777 N.W.2d 866); *see also Tuhy*, 2018 ND 53, ¶ 22, 907 N.W.2d 351.

[¶23] Johnson argues the district court did not make findings on the values of the property and did not find the value of the entire estate before distribution. He claims the values included in the court's conclusions are not the same as the values listed in either party's Rule 8.3 asset and debt listing and it is impossible to understand where the values came from and what the ultimate distribution is. He also contends his net award did not include all of the debts listed on the asset and debt listing. Johnson did not raise these issues in his motion for a new trial, and therefore they will not be reviewed on appeal.

7

[¶24] Johnson also argues the property distribution was not equitable. He contends there is a substantial disparity of approximately $300,000, and the district court did not explain the disparity.

[¶25] The district court made oral findings on the record at trial, including that the net estate was valued at $3,102,000, and each party would receive approximately one-half of the marital estate. Lessard was awarded the parties' home and lake property, any checking or savings bank accounts in her name, investment and retirement accounts in her name, various vehicles, and most of the parties' credit card and mortgage debt. Johnson was awarded the parties' interest in hunting land, the personal property in his possession and $25,000 worth of personal property in Lessard's possession, any checking or savings account in his name, investment and retirement accounts in his name, $251,344 from Lessard's Sanford Retirement Savings Plan, a pickup truck, and the debt from his credit card. Lessard also was ordered to pay Johnson a lump sum of $600,000 as a property payment no later than 90 days after notice of entry of judgment. The court ordered Lessard would remain the owner of the children's College Save Individual 529 college savings accounts, which were established for the benefit of the children, and the children would remain the beneficiaries of those accounts. The court explained the children's college savings accounts would not be included in calculating each parties' net property award.

[¶26] Johnson raised this issue in his motion for a new trial, and the district court denied the motion explaining the distribution was almost equal and was equitable. The court stated it ordered that the three college savings accounts remain in Lessard's name but the children would be the beneficiaries, and each party received approximately $1,551,000 of the remaining assets and debts. The court noted Lessard received more assets, but she also received almost all of the parties' debt and she was required to pay Johnson $600,000 in cash almost immediately. The court also explained its decision during the trial, stating the net marital estate was worth $3,102,000 after the children's college savings accounts were removed from the total and the court would award each party $1,551,000, which was half of the net estate.

[¶27] The district court explained its property distribution and found the distribution is equitable. The court explained it was not including the value of the college savings accounts in evaluating whether the distribution was equitable because the children are the beneficiaries of those accounts. The remaining property was almost equally distributed. We conclude the property distribution is not clearly erroneous.

C

[¶28] Johnson argues the district court erred by failing to award him any spousal support. He contends the court's decision will force him to deplete his property distribution in order to maintain the same lifestyle. He claims he stayed at home with the children from 2010 through 2017 and Lessard's gross annual income is more than six times greater than his.

[¶29] Johnson did not raise this issue in his motion for a new trial. Johnson waived review of this issue by failing to raise it in his motion for a new trial. *See Tuhy*, 2018 ND 53, ¶ 22, 907 N.W.2d 351.

V

[¶30] Johnson argues the district court abused its discretion by failing to award him attorney's fees. Johnson also failed to raise this issue in his motion for a new trial, and therefore he failed to preserve the issue for review and it will not be addressed on appeal. *See Prairie Supply,* 2015 ND 190, ¶ 7, 867 N.W.2d 335.

VI

[¶31] Johnson argues the district court erred by denying his motion for contempt without holding a hearing and without an order to show cause.

[¶32] Johnson's notice of motion states the motion "will be heard by the Court pursuant to Rule 3.2 of the North Dakota Rules of Court." The notice further stated, "This motion will be decided on briefs unless oral argument or the taking of testimony is timely requested by a party or required by the Court." This Court has held N.D.R.Ct. 3.2 applies to motions for contempt and provides

the procedure for submitting a motion and requesting a hearing. *State ex rel. Seibold v. Leverington*, 2012 ND 25, ¶ 9, 812 N.W.2d 460. A party bringing a motion under N.D.R.Ct. 3.2 may have the motion decided on the briefs or may request oral argument. *See* N.D.R.Ct. 3.2(a)(1). Under N.D.R.Ct. 3.2(a)(3), a party's timely request for oral argument must be granted. The court may require oral argument on its own. N.D.R.Ct. 3.2(b).

[¶33] Section 27-10-01.3(1)(a), N.D.C.C., states the court may impose a remedial sanction for contempt "after notice and hearing." A party moving for contempt is entitled to an evidentiary hearing if a hearing is requested. *See Dietz v. Dietz*, 2007 ND 84, ¶ 21, 733 N.W.2d 225. A hearing is required before the court may find a party in contempt and impose a remedial sanction. N.D.C.C. § 27-10-01.3(1)(a); *see also Holkesvig v. Welte,* 2012 ND 14, ¶¶ 12-13, 809 N.W.2d 323. A party is entitled to a hearing on a motion for contempt under N.D.C.C. § 27-10-01.3, but the party is required to comply with the procedural requirements of N.D.R.Ct. 3.2 for requesting a hearing. *Seibold*, 2012 ND 25, ¶ 16, 812 N.W.2d 460.

[¶34] The district court has discretion in deciding contempt motions, and this Court will not reverse the district court's decision unless it abused its discretion. *Hoffman v. Jevne*, 2019 ND 156, ¶ 8, 930 N.W.2d 95.

[¶35] Johnson did not request oral argument in either his notice of motion or in the motion for contempt. Lessard responded to Johnson's motion for contempt and also did not request a hearing. Both parties filed affidavits. Because neither party requested a hearing under N.D.R.Ct. 3.2, the district court had discretion in deciding whether to schedule an evidentiary hearing or rule on the motion based on the parties' briefs and affidavits. *See Hoffman*, 2019 ND 156, ¶ 9, 930 N.W.2d 95.

[¶36] Johnson alleged Lessard violated various provisions of the amended judgment by "publicly demeaning and disrespecting" him in front of the children, failing to insulate the children to the greatest extent possible from adult disputes, communicating with him inappropriately and disrespectfully about the children, and failing to use her best efforts to foster a relationship

between the children and him. Johnson also claimed Lessard obstructed his phone communication with the children.

[¶37] The district court denied Johnson's contempt motion based on the parties' submissions. The court found Johnson failed to clearly and satisfactorily show the alleged contempt was committed. The court found Johnson's statements in his affidavit about the alleged instances of contempt did not "'clearly and satisfactorily show' that Lessard intentionally, willfully and inexcusably violated the Judgment." The court explained the contempt statutes were not intended to attempt to regulate and adjudicate every angry word or quarrel. *See Rath v. Rath*, 2013 ND 243, ¶ 11, 840 N.W.2d 656.

[¶38] The district court did not act in an arbitrary or unreasonable manner and the court did not misinterpret or misapply the law. We conclude the court did not abuse its discretion by denying Johnson's motion for contempt without holding an evidentiary hearing.

VII

[¶39] We affirm the amended judgment and orders.

[¶40] Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Gary Lee, D.J.
Gerald W. VandeWalle, C.J.

[¶41] The Honorable Gary Lee, D.J., sitting in place of McEvers, J., disqualified.

11